4-3716

Opinion delivered February 18, 1935.

*Benson & Woolsey,* for appellant.

*Jeta Taylor* and *G. C. Carter,* for appellees.

SMITH, J. Appellees brought separate suits, which were consolidated and tried together before the court sitting as a jury by consent, in which they sought to recover balances alleged to be due them for teaching school in District 39 in Franklin County. The suit was defended upon the ground that the contracts were void as having been entered into by two of the directors at a meeting which the third director did not attend, and of which he had no notice. The additional defense was interposed in the suit of appellee Pascal Gattis that he was the son of one of the directors and had been employed without procuring a petition for his employment signed by two-thirds of the patrons of the school, as required by § 9029, Crawford & Moses' Digest.

It appears that in October, 1933, at the time the written contracts to teach the school were entered into, a contest was pending which involved the election of all three of the directors. In the trial of this contest it had been held by the circuit court that Gattis, Kuykendall and Mathews had been elected; but that judgment was reversed by this court on December 11, 1933. *Watson* v. *Gattis,* 188 Ark. 376, 65 S. W. (2d) 911.

It appears that Mathews refused to recognize Gattis and Kuykendall as directors, and, although he twice attended a meeting at which they were both present, he declined to participate, on the ground that Gattis and Kuykendall could not legally act for the district. Mathews declined to attend other meetings which Gattis and Kuykendall called. It was desired by Gattis and Kuykendall to have a six-months' school taught beginning in October, and they undertook to give notice to Mathews of the meeting at which teachers would be employed. To this end Gattis and Kuykendall went to the home of Mathews, but found him absent. They then went to the home of his mother a half or three-quarters of a mile distant, where a written notice was left. Mrs. Mathews was at home, but it was not shown that she delivered the notice to her son. Mathews admitted, however, that he did receive the notice at the hands of his mother, but not until after the meeting had been held. Following this, Gattis and Kuykendall, four days later, met at the schoolhouse pursuant to the notice, and executed the contracts sued on. Gattis testified that Mathews came to the schoolhouse after the meeting had been held and he and Kuykendall had departed.

It is reasonably certain that Mathews did not intend to recognize Gattis and Kuykendall as directors, and it is fairly inferable that he was evading notice of their meetings. He went away to work in another county, and also in Oklahoma, although he testified that he spent the week-ends at his own home.

The petition for the employment of young Gattis was headed: "We, the undersigned patrons and electors of District No. 39, petition * * *," etc., and it is clear that Gattis and Kuykendall were under the impression that

electors in the district who were not patrons of the school might also sign the petition to comply with § 9029, Crawford & Moses' Digest, which prohibits the employment of persons related to a director within the fourth degree of consanguinity or affinity unless two-thirds of the patrons of the school petition them to do so. In this they were mistaken, as only patrons of the school are eligible to sign such petitions. See *Carroll* v. *Leemon Special School District,* 175 Ark. 274, 299 S. W. 11, where the word "patrons," employed in the statute, was defined. But, even so, there was substantial testimony to support the finding that the required number of patrons had signed the petition.

Upon the reversal of the judgment of the circuit court declaring Gattis and Kuykendall elected, the directors whose offices had been contested by Gattis and Kuykendall gave the teachers on December 13, 1933, a written notice to discontinue the school, but they declined to do so and continued to teach for the full period of time covered by the contracts.

There is no question that at the time the contracts were entered into Gattis and Kuykendall were *de facto* directors, and, under the judgment of the circuit court then in force, they were *de jure* directors. They therefore had the authority, under the law, to make contracts to have the school taught. In the case of *Carroll* v. *Leemon Special School District, supra,* we quoted from the case of *Faucette* v. *Gerlach,* 133 Ark. 58, 201 S. W. 832, as follows: "A person who enters into an office, and undertakes the performance of duties thereof by virtue of an election or appointment, is an officer *de facto,* though he was ineligible at the time he was elected or appointed, or has subsequently become disabled to hold office."

It remains therefore only to decide whether, having the power to contract, as we hold they did here, this power was exercised in the manner required by law.

Now it has been many times decided that for a valid contract to be made in the name of a school district there must be a meeting attended by all directors, or of which all had notice. We think this notice means simply in-

formation of the meeting given in a time and manner sufficient to afford reasonable opportunity to attend. It is not essential that notice be served in the manner required for service of notices under the Code.

Under the facts of this case, we think there was a substantial compliance with the law in regard to giving Mathews notice of the meeting. He stated that, if he had been present, he would not have voted. There was an apparent attempt in good faith to give Mathews notice, which his own conduct appears to have made abortive, and we conclude, therefore that the notice was given which the law requires.

The judgment of the court finding for the plaintiffs conforms to this view, and it is therefore affirmed.